## 3997.   PROGRESS CLUB *v.* THE STATE.

1. Corporations are responsible for violations of penal laws, but, being intangible, artificial persons, without physical existence, the legislature has provided a certain mode of service by which the courts acquire jurisdiction of them in criminal prosecutions, and until there has been service in the method prescribed by law (unless it be waived), a trial of a corporation can not legally proceed.

2. Where not otherwise provided by statute, a corporation (in the absence of waiver of indictment) can be tried for crime only upon an indictment or presentment of a grand jury.

3. There being no indictment in this case, the clerk of the city court of Brunswick was not authorized to issue, or the sheriff to serve, a notice as prescribed in section 963 of the Penal Code. The city court was without jurisdiction to try the offense alleged in the accusation, based upon the affidavit of the prosecutor; and the exceptions of the defendant corporation to the notice served upon it, and the plea to the jurisdiction, should have been sustained.

DECIDED JANUARY 30, 1913.

Accusation of misdemeanor; from city court of Brunswick—Judge Krauss. December 9, 1911.

*Max Isaac,* for plaintiff in error. *Ernest Dart, solicitor,* contra.

RUSSELL, J. On November 6, 1911, an accusation was brought in the city court of Brunswick, charging the Progress Club, a social association and corporation, with a violation of the tax act of 1909, section 2, paragraph 17 (Acts of 1909, p. 42), in having failed to register and pay the license tax required in the said paragraph. The present writ of error contains assignments of error predicated upon exceptions to various rulings during the trial, to certain excerpts from the charge of the court, and to the conduct and language of the judge in recalling the jury, after they had retired, and inquiring into the progress of their deliberations. We deem it wholly useless to deal with any of these exceptions, for the reason that we are of the opinion that the case is absolutely controlled by the jurisdictional point presented by exceptions to the notice served upon the defendant corporation, and by the plea to the jurisdiction and the demurrer to the accusation.

Stated in its ultimate terms, the question is: Can a corporation charged with a violation of a penal law be arrested and brought before the court for trial in any case, unless an indictment or presentment has been preferred against it by a grand· jury? As we conclude that no corporation can be served with the notice prescribed by section 963 of the Penal Code as the only means of

service upon those intangible, artificial creatures of the law known as corporations, unless the charge (of the crime alleged to have been committed) has been made by the grand jury of the county in which the offense is alleged to have been committed, it follows, of course, that the city court of Brunswick, proceeding upon an accusation, was without jurisdiction, and that the proceedings were nugatory. The city court of Brunswick would, of course, have had jurisdiction if the defendant had been charged by an indictment or presentment of the grand jury of Glynn county, and this indictment had been regularly transferred to the city court.

It may be that if the point had been waived in the trial court and here presented for the first time, we could not consider it (*High* v. *Padrosa,* 119 *Ga.* 648, 46 S. E. 859), but the accused corporation protested the jurisdiction of the court at every proper stage of the trial, from the time the case was called upon the docket. Id.. We have several times held that, for all practical purposes, an accusation in a city court supplies the place of, and is governed by the rules, that apply to, indictments and presentments. Only recently we repeated that ruling, in the case of *Flint* v. *State,* ante, 169, and in deciding that case, we did not lose sight of our ruling in *Goldsmith* v. *State,* 2 *Ga. App.* 284 (58 S. E. 486), that, in view of the marked difference in the origin of an accusation and that of an indictment, an accusation might be amended, though an indictment could not be; nor did we overlook the fact that the provisions of section 388 of the Penal Code expressly require, as to certain offenses, that the charge shall originate with the grand jury, and not otherwise (Penal Code, §§ 385, 386, 387).

It was argued with some force, and it is perhaps true, that the same reasons which influenced the General Assembly in requiring, as to the offenses mentioned in §§ 385-6-7, that the charge shall be made by the grand jury, may have been considered by the General Assembly in the adoption of section 963. Inasmuch as the General Assembly was licensing "locker clubs" as a revenue measure, it may be that it can be implied that it remitted to the grand jury (who exercise a supervision of the county finances) the sole duty of inquiring as to whether such clubs have complied with the law, and of instituting proceedings in case they have failed in this respect, and at the same time intended to protect clubs com-

plying with the regulations from personal prosecutions that might be ill-advised or based upon whim or caprice. This was undoubtedly the reason for expressly restricting prosecutions for opprobrious words and abusive language, and similar offenses, to the initiative of the grand jury. But a court, as such, can not consider the wisdom of a law; it can only enforce it as it is written, and criminal laws must always be strictly construed in favor of the accused.

It may be that there is no substantial reason why a criminal proceeding against a corporation should not be begun by an accusation in a city court, but, in criminal law, the statement of a definite mode of procedure excludes the employment of any other method. Section 5 of the act of 1909 (Acts of 1909, p. 61), provides that "any person failing to register with the ordinary, or having registered, fails to pay the special tax as herein required, shall be liable to indictment for misdemeanor," and on conviction shall be punished as prescribed. In our judgment the offenses thus denounced can only be punished after indictment by the grand jury; and, consequently, a notice given in compliance with the provisions of the Penal Code, § 963 (which is also confined to cases against corporations), can not have a wider scope. In § 963 it is provided that "whenever an indictment or special presentment against a corporation doing business in this State is returned, or filed in any court in this State having jurisdiction of the offense, the clerk of said court shall issue an original and copy notice to the defendant corporation of the filing of such indictment or special presentment, which copy notice shall be served by a sheriff," etc. While it has been uniformly held that a corporation may be punished for any violation of the criminal law which it may commit through any of its agents (*Southern Express Co.* v. *State,* 1 *Ga. App.* 700, 58 S. E. 67), still there must be a difference in the prosecution of a corporation and that of an individual. It is provided in § 963 that if, after service of the prescribed notice, the defendant corporation fails to appear, the trial shall proceed as though the defendant had appeared and pleaded, and it shall be subject, if convicted, to the same penalties as if its agents were personally present. The trial of a citizen can not proceed in his absence, and a verdict of guilty upon a trial in his absence would not afford basis for a judgment that could be en-

forced. This fact makes an essential difference, recognized by the General Assembly, in the process necessary to bring a corporation to trial for a criminal offense, and which clothes the court with jurisdiction to deal with the case. In the present instance the case proceeded by accusation, and the notice was issued in pursuance of the accusation and in conformity with it. Naturally, therefore, the notice was not the identical notice prescribed by § 963, because it did not and could not notify the defendant corporation "of the filing of such indictment or special presentment." No indictment or presentment had been filed. For this reason, an adjudication that the city court had jurisdiction involves a liberal construction, adverse to the accused, not only of one criminal statute, but of two. Not only must the indictment mentioned in section 5 of the tax act of 1909, supra, be broadened so as to include an accusation, but the words "indictment or presentment" (which include the only method by which a grand jury can prefer a criminal charge) must likewise reach out and include the specific term "accusation," as applied to city courts and other like inferior judicatories. Of course, the word "accusation," as a generic term, may include indictment and presentment, and any other form of writing which may legally be employed to charge a criminal offense. But while "accusation" is a generic term which includes indictment, "indictment" does not include accusation; nor does a "presentment." The definition of each of these terms is well fixed by law. Each is the written evidence of the notice which the grand jury has taken of the violation of a penal law; they differ only as to their origin. An indictment originates at the instance of a prosecutor. The presentment is the notice which the grand jury, of its own motion, without the assistance of a prosecutor, takes of the violation of law. In our judgment it can not be assumed that the legislature intended that the species of criminal informations usually called, in the city courts of this State, "accusations" should be included in the terms "indictment" and "presentment," which are in themselves merely denominative of other co-ordinate species. An "accusation," as that term applies to an information brought in a city court at the instance of a prosecutor, is generally to be treated as the equivalent of an indictment or presentment which has been transferred from a superior court to the lower tribunal; but this, for reasons apparent in the rulings which

12

we have cited, can not be said to be an invariable rule; and when the rights of the citizen depend upon the construction of a criminal statute, there is no safe rule but to restrict the operation of the law within its precise terms, and apply to these terms their general and ordinary signification.

Upon a point somewhat similar in principle to that with which we are now dealing, the Supreme Court, in *Hudson* v. *State,* 91 *Ga.* 553 (18 S. E. 432), held that "a case triable on indictment is not a case for accusation, and a case triable on accusation is not one for indictment." This language was used only with reference to a ruling that one who was surety on a bond conditioned for the appearance of his principal to answer a bill of indictment was not required to produce his principal in answer to an accusation filed in the county court; but Chief Justice Bleckley, in stating one of the reasons for the decision, calls attention to the fact that a county-court accusation is "something different [from an indictment], both in form and substance;" and the decision really turns upon that distinction. In *Gordon* v. *State,* 102 *Ga.* 679 (29 S. E. 444), the Supreme Court, after referring to the distinction between the meaning of the term "accusation" in its broad sense, and its meaning when employed to denominate an information for a misdemeanor, in certain trial courts, says: "The term, as used in our law in reference to trials in courts having jurisdiction in misdemeanor cases, is but the equivalent of an information at common law; and therefore we find that the constitution uses this term in its broad and unrestricted sense, while, when the term is used in reference to the form in which the charge is made in the courts having jurisdiction of misdemeanors, it is used in its limited and restricted sense, of a method of prosecution different from an indictment or presentment." The same difference is recognized in *Wright* v. *Davis,* 120 *Ga.* 676 (48 S. E. 173), where the present Chief Justice refers to the difference between an indictment and an accusation in a city court, dependent upon the fact that the former is sanctioned by the oath of a grand jury, while the latter is the mere allegation of the prosecuting officer, sanctioned only by his oath of office, and also calls attention to the fact that there is no general law in reference to the jurisdiction, powers, procedure, or practice in city courts in this State, and that such courts are

expressly exempted from the provisions of the constitution which require uniformity.

As further marking the qualities of an accusation, when the term is used in its restricted sense, and distinguishing it from an indictment, the Supreme Court, in *Mitchell* v. *State,* 126 *Ga.* 84 (54 S. E. 931), held that affidavits,made before commercial notaries public are sufficient basis for framing an accusation in the criminal court of Atlanta. And this court has been inclined to treat the preliminary affidavit, used as a basis for accusation, as generally entirely immaterial, if there appeared no question of the jurisdiction of the lower court to deal with the offense. In *Flanders* v. *State,* 9 *Ga. App.* 820 (72 S. E. 286), the difference between an indictment and an accusation was pointed out. We held that accusations in a city court were not included within the provisions of section 954 of the Penal Code, which prescribes the form for indictments, although the word "accusation" is employed in the code section; for it is perfectly manifest from a reading of the section that the word "accusation," as therein used, is to be understood in its broad and generic, and not in its more limited and restricted sense. Although city courts may have jurisdiction of misdemeanors, this does not divest the superior court of its original jurisdiction—concurrent with all other courts—to try misdemeanors (*Pye* v. *Gillis,* 9 *Ga. App.* 400, 71 S. E. 594); and there is much force in the argument that the provision of the tax act, to the effect that failure to register or pay the tax subjects the delinquent to indictment, evidences the intention of the General Assembly that these matters should rest with the superior court, where an inquisition at the hands of the grand jury may be had, and that the subject be not open to the whims and fancies of individual prosecutors. The general rule, however, that criminal statutes are to be strictly construed is more potent with us, in view of the ruling of the Supreme Court in *Southern Railway Co.* v. *State,* 125 *Ga.* 290-3 (54 S. E. 162, 114 Am. St. R. 203, 5 Ann. Cas. 411). In that case (in which a corporation, by appearance and demurrer, waived service of process) the Supreme Court, in construing § 938 of the Code of 1895, which is now § 963 of the Penal Code, says: "The Penal Code, § 938, provides the process against a corporation which has been indicted. As this intangible person has no physical existence, the legislature has provided a

certain mode of service by which the court acquires the power to hear and determine the charge against the corporation under indictment. The sole purpose of the service and notice provided for in that section is to bring the artificial person before the bar of the court for trial. Until service is had *in the prescribed way* [italics ours], or is waived by the corporation, the trial can not legally proceed."

Inasmuch as in this case service was not had in the prescribed way, and was not waived, under the ruling of the Supreme Court the trial could not legally proceed, and the judgment rendered was necessarily a nullity. *Judgment reversed.*